UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARL H. KARLSEN,

DECISION AND ORDER

Petitioner,

17-CV-6386L

v.

KILPATRICK,

Respondent.
_____

Petitioner Karl H. Karlsen has filed a *pro se* petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254, challenging his conviction and sentence in New York State Supreme Court,

Seneca County of murder in the second degree (also known as "depraved indifference" murder)

(N.Y. Penal Law § 125.25(2)), arising out of the death of his son Levi Karlsen ("Levi") on

November 20, 2008. Karlsen is currently serving a sentence of fifteen years to life

imprisonment.

For the following reasons, the petition for a writ of habeas corpus is denied, and the

Court denies issuance of a certificate of appealability.


**BACKGROUND**[1]

On November 3, 2008, petitioner obtained a $700,000 life insurance policy on his son

Levi, naming himself as sole beneficiary. Levi was petitioner's son by his first wife, Christine,

---

[1] The relevant facts are taken from the transcript of petitioner's plea proceeding and the *Huntley* hearing concerning the admissibility of statements that he made to police investigators and to wife (now ex-wife) Cindy Karlsen.

who had died in a fire in California in 1991.  Christine's death had been ruled non-accidental, but prior to Levi's murder in 2008, no one had been charged in connection with her death.

Seventeen days after petitioner obtained that policy on Levi's life, he and Levi (who was married and had two children) went before a notary public, who witnessed Levi sign a handwritten will that purported to leave Levi's entire estate to petitioner in the event of Levi's death.  Within hours after Levi signed that will, Levi was killed.

Just prior to Levi's death, he was in petitioner's garage, working on a truck.  Levi was underneath the truck, which had been jacked up with a single jack under the front bumper.  The front wheels of the truck had been removed.  By his own admission at his later plea proceeding in state court, petitioner, knowing that the truck was unstable, jumped into the cab, which caused the truck to fall on Levi's chest.

Levi did not die immediately.  Despite knowing that Levi was still alive, but pinned to the ground, petitioner made no attempt to help him, but left the scene.  He then went out for several hours with his then-wife, Cindy Karlsen ("Cindy"), who was not present during these events, and who was unaware that any of this had occurred.

When petitioner and Cindy returned home, Karlsen "discovered" Levi's body in the garage, under the truck.  Cindy called 911, and Levi was taken to a hospital, where he was pronounced dead.

Initially, Levi's death was deemed accidental, based in part on Karlsen's statements to medical personnel, which indicated that when Karlsen left, Levi was alive and still working on the truck.  Petitioner subsequently filed a claim under Levi's life insurance policy, and collected $707,000.

By late summer 2011, Cindy began to suspect that petitioner had killed Levi. After

learning that petitioner had reinvested some of the money he received from Levi's life insurance

policy into a $1.2 million policy on *her* life, naming him as sole beneficiary, Cindy separated

from petitioner.

Cindy contacted the police, and told them of her suspicions. She also began

surreptitiously recording her conversations with petitioner at their occasional meetings. At one

such meeting on November 14, 2012, which took place at a restaurant, petitioner admitted to her

that he had killed Levi.

Cindy met petitioner at another restaurant two days later. This time, she was wearing a

wire that had been placed on her by police investigators, with her consent. She also knew that

plainclothes investigators were seated nearby. Petitioner again made several incriminating

statements, admitting, in sum and substance, that he had deliberately caused the truck to fall on

Levi.

At the investigators' direction, Cindy arranged to meet petitioner again at a restaurant a

few days later. This time, however, when Karlsen arrived at the restaurant, the investigators

approached him, identified themselves, and asked Karlsen if he would be willing to speak with

them. He agreed to accompany them to the Seneca County Sheriff's Department building.

At the sheriff's department, petitioner was taken to an interview room, where he was

questioned by the investigators. He was not handcuffed or told that he was under arrest, or that

he could not leave. Near the end of the interview, which lasted about nine and a half hours,

petitioner agreed to handwrite and sign a statement, in which he admitted that the truck fell on

Levi when petitioner got into the front seat. He did not, in that statement, say that he intended to

kill Levi, but stated that when the truck fell off the jack, he "panicked" and left the scene.  State Record ("SR") at 416.

On November 29, 2012, a Seneca County grand jury returned an indictment charging petitioner with two counts of murder in the second degree under New York Penal Law §§ 125.25(1) (intentional murder) and 125.25(2) (depraved-indifference murder), and one count of second-degree insurance fraud.

Prior to trial, petitioner moved to suppress evidence of his statements to Cindy and to the police investigators.  Following a multi-day *Huntley* hearing, the state court issued a decision and order dated October 1, 2013, denying petitioner's motion.[2]  SR 463-75.  After making detailed findings of fact, the court concluded that: (1) petitioner's *Miranda* rights had been properly given, and knowingly and voluntarily waived by him; (2) viewed under the totality of the circumstances, the investigators' questioning of Karlsen at the sheriff's department did not deny him his due process rights or create a substantial risk that he might falsely incriminate himself; (3) petitioner's statements to Cindy were not barred by New York's spousal privilege; and (4) neither Cindy's professed willingness to consider reconciling with petitioner if he told her the truth, nor her intimation that their conversation would be private or confidential rendered plaintiff's admissions to her involuntary or inadmissible.  *Id.*

The case then proceeded to trial.  After jury selection but before the start of proof, however, petitioner agreed to plead guilty to one count of depraved-indifference murder, in full satisfaction of the indictment, and in exchange for an indeterminate prison term of fifteen years to life and for the People's agreement not to pursue a civil forfeiture action.

---

[2] The purpose of a *Huntley* hearing is to determine whether any statements made by a defendant should be suppressed.  *See People v. Huntley*, 15 N.Y.2d 72 (1965).

During the plea proceeding, there was a discussion about the then-ongoing investigation in California into the death of petitioner's first wife, Christine.  It appears that authorities in California, having learned that Levi's death had been ruled a homicide, had reopened their investigation into Christine's death in 1991.

At the plea proceeding, petitioner's attorney stated that "we are aware of the fact that California is not – is recognizing this plea and is not likely to proceed."  (Dkt. #10-6 at 86.)   But when asked by the Court, "To be clear, though, there has been no promise to what California is going to do; is that correct?," petitioner's attorney responded, "Yes, they indicated from direct conversations with me, however, that they are not likely to proceed because of the nature of this sentence."  *Id.*  In other words, the authorities in California had indicated that they were *unlikely* to proceed, in light of petitioner's guilty plea and sentence in New York, but they did not make any promises in that regard, nor did anyone involved with the New York prosecution.  At the plea proceeding the district attorney also stated on the record that he "ha[d]n't had any conversations with California on that."  *Id.* at 87.  Petitioner never interjected during this discussion.

During the following plea colloquy, petitioner admitted to the facts underlying the depraved-murder charge.  Specifically, he acknowledged that when the relevant events occurred:  he knew that the truck was unstable, given the way it had been jacked up; he knew that his jumping into the cab created a substantial and unjustifiable risk that the truck would fall onto Levi; the truck did fall onto Levi's chest, pinning him to the ground; he knew that Levi was still alive; petitioner made no attempt to help him, or to summon help; and he left the scene for several hours, knowing that Levi was highly likely to die by the time petitioner returned home.

The trial court accepted the plea. On December 16, 2013, the court imposed the agreed-upon sentence of fifteen years to life imprisonment.

Perhaps contrary to petitioner's hopes, the authorities in California did charge him with Christine's murder in August 2014. *See* "Karl Karlsen charged with murdering first wife in 1991 California fire" (Aug. 29, 2014), *available at* www.syracuse.com. Because petitioner is alleged to have committed the murder "for financial gain," he could under California law be sentenced to death. The "financial gain" aspect stems from the fact that after Christine's death, petitioner collected about $200,000 in life insurance proceeds. He is awaiting trial on that charge, which is currently scheduled to begin in late August 2019. *See* "Karlsen trial rescheduled to August," *Calaveras Enterprise*, (Jan. 11, 2019), *available at* www.calaverasenterprise.com.[3]

On September 10, 2014, petitioner filed a *pro se* motion in New York state court to withdraw his guilty plea. He claimed that he had "lied" when he admitted to murdering Levi, that he was mentally impaired at the time of the plea, and that his then-counsel was ineffective in certain respects. SR 22-30. In a one-page decision and order issued October 9, 2014, the trial court denied the motion on the ground that it was untimely, because it had been brought pursuant to C.P.L. § 220.60(3), which requires such motions to be brought prior to the imposition of sentence, not after, as occurred here. SR 2.

Petitioner then moved *pro se* to vacate his conviction under C.P.L. § 440. SR 112-42. In support of his motion, petitioner raised a number of grounds: (1) lack of jurisdiction, based on

---

[3] These facts are taken from the State's response and the cited news articles, and do not appear to be disputed by petitioner. They are provided only by way of background and are not material to this Court's decision on the petition before me. There does not appear to be any dispute, though, that petitioner is now facing murder charges in California, stemming from the death of his first wife.

the prosecutor's alleged amendment of the indictment; (2) that his guilty plea had been obtained by means of "duress, misrepresentation, or fraud"; and (3) ineffective assistance of counsel.

On February 17, 2015, the state court denied petitioner's motion on the ground that "[t]he judgment is pending appeal and sufficient facts appear on the record with respect to the issues raised in the motion so as to permit adequate review upon appeal." SR 98. The Appellate Division denied leave to appeal from that decision, and the Court of Appeals dismissed petitioner's application for leave to appeal to that court. SR 82; 26 N.Y.3d 1009 (2015).

Petitioner also filed a direct appeal from his conviction, with new counsel. He asserted several grounds for relief concerning, *inter alia*, suppression of his statements, ineffective assistance of counsel, and other matters. *See* SR 189-233.

The Appellate Division rejected all of Karlsen's arguments, concluding that: petitioner's challenge to the trial court's ruling on the admissibility of his statements to his wife had been forfeited by his guilty plea; the record supported the trial court's findings that petitioner's statements to the police were voluntarily made, and that petitioner had validly waived his *Miranda* rights during the police interview; petitioner's due process rights had not been violated; petitioner's contention that the trial court erred in accepting his guilty plea had not been preserved for appellate review, and was meritless in any event; and his claims of ineffective assistance were meritless. *People v. Karlsen*, 147 A.D.3d 1466 (4th Dep't 2017). The Court of Appeals denied leave to appeal on June 6, 2017. 29 N.Y.3d 1082.

Karlsen filed his petition in this Court on June 16, 2017.[4]  He has asserted eight grounds

for relief:  (1) the state court lacked jurisdiction because the prosecutor effectively amended the

indictment; (2) the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing

certain information; (3) petitioner's trial counsel was ineffective; (4) the state court's decision

denying petitioner's § 440 motion deprived petitioner of his right to appeal; (5) the trial court

should have excluded petitioner's statements to Cindy on the basis of New York's spousal

privilege; (6) admission of petitioner's statements to the police investigators should have been

precluded on several grounds, including denial of his right to counsel; and (7) petitioner's guilty

plea was invalid, for a number of other reasons.  The State ("respondent") has filed a response to

Karlsen's habeas petition, contending that all those grounds are meritless.

## DISCUSSION

### I. General Principles

Federal habeas review is available for a state prisoner "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2254(a).  Errors of state law are not subject to federal habeas review.  *See*, *e.g.*, *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991); *Martin v. Conway*, 764 F.Supp.2d 545, 548 (W.D.N.Y.

2011).

In reviewing state criminal convictions in a federal habeas corpus proceeding, a federal

court does not sit as a "super" state appellate court.  *See Estelle*, 502 U.S. at 67-68; *Ponnapula v.*

---

[4] As explained in this Court's July 31, 2017 Order (Dkt. #5), petitioner actually filed two separate petitions on the same day, challenging the same underlying conviction, but asserting different legal grounds.  Pursuant to that Order, the second-filed petition was treated as an amendment to the first-filed petition.  The present Decision and Order addresses all the grounds raised in both petitions.

*Spitzer*, 297 F.3d 172, 182-83 (2d Cir. 2002). With respect to review of state court convictions, "[f]ederal habeas corpus is a backstop. It lets federal courts review the merits of federal claims in state criminal cases. But federal courts do not sit to review state law. So federal courts will not review federal claims when the state court's decisions are supported by a state-law reason, an 'independent and adequate state ground.'" *Richardson v. Superintendent Coal Township SCI*, 905 F.3d 750, 759 (3d Cir. 2018) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

In that same vein, the habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, provides that when a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court may grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). As this Court has stated before, that standard poses "a formidable obstacle to habeas relief ... ." *Clark v. Noeth*, 351 F.Supp.3d 369, 371 (W.D.N.Y. 2019), *appeal filed*, No. 19-317 (2d Cir. Feb. 5, 2019).

"Clearly established federal law" refers to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotations omitted). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court when "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts." *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413). The question is "not whether the state court was incorrect or erroneous in rejecting [petitioner's claim], but whether it was objectively unreasonable in doing so." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (quotations omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is 'meant to be' a difficult standard to meet." *Virginia v. LeBlanc*, 582 U.S. __, 137 S.Ct. 1726, 1727 (2017) (per curiam) (quoting *Harrington*, 562 U.S. at 102).


## II. Waiver

As the Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to the entry of a guilty plea." *Accord Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008). In addition, a defendant who has pleaded guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was constitutionally deficient, or by showing that the court in which he pleaded guilty lacked

jurisdiction over his case. *Id.  See also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings") (per curiam).

In the instant case, petitioner stood in open court, and admitted his guilt as to all the elements of the crime with which he was charged.  By virtue of his guilty plea, then, Karlsen has waived all his claims other than his claims that the state court lacked jurisdiction, that his guilty plea was invalid, that his then-counsel was ineffective in connection with the plea proceedings, and certain claims relating to the trial court's constitutional rulings prior to the entry of his guilty plea, as explained below.

### III. Jurisdiction

Petitioner argues that the trial court lacked jurisdiction over his case because the prosecution effectively amended the indictment when, in response to petitioner's request for a bill of particulars, the prosecution provided an approximate time of death.

This claim is procedurally barred.  Petitioner raised it in his § 440 motion, and the state court denied it on the ground that he could raise the claim in his upcoming appeal.  He failed to do so, and he has not shown cause for, or prejudice resulting from, that failure.

Since the claim ostensibly relates to the state court's jurisdiction, however, I will address it on the merits.  In short, it has no merit.

Petitioner's suggestion that the prosecution's bill of particulars constructively amended the indictment is ludicrous.  The bill of particulars did not change the state's theory of the case whatsoever.  It did exactly what a bill of particulars is supposed to do, which is to amplify the

prosecution's allegations, so as to assist the defendant in preparing the defense. *See United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) (purpose of a bill of particulars is to "inform a defendant of charges with sufficient precision to allow preparation of a defense, to avoid unfair surprise, and to preclude double jeopardy").

## IV. Validity of Petitioner's Guilty Plea

Petitioner asserts that his guilty plea was invalid because it was unclear when he entered the plea whether California would pursue charges against him, and because the trial court did not sufficiently inquire into his mental fitness to enter a plea.

In its February 10, 2017 decision affirming petitioner's conviction, the Appellate Division held that petitioner's "contention that the [lower] court erred in accepting his guilty plea is unpreserved for our review, inasmuch as defendant did not move to withdraw the plea or vacate the judgment of conviction, and nothing on the face of the record calls into question the voluntariness of the plea or casts significant doubt upon defendant's guilt." 147 A.D.3d at 1468 (citing N.Y. C.P.L. §§ 220.60(3), 440.10)).[5]

As explained above, though petitioner has not waived this claim, the state court's reliance on an 'independent and adequate state ground" for its decision precludes this Court from reviewing that decision. It is a "firmly established" rule in New York that to preserve a claim that a guilty plea was involuntarily made, "a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or move to vacate the judgment of conviction under C.P.L. § 440.10."

_____

[5] Section 220.60(3) of New York Criminal Procedure Law provides that "[a]t any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored."

*Haynes v. New York*, No. 10-CV-5867, 2012 WL 6675121, at *10 (E.D.N.Y. Dec. 21, 2012) (citing cases, and concluding that "[t]he procedural bar relied upon by the Appellate Division in this case was firmly established and regularly followed, and therefore constitutes an adequate state-law ground barring review of the merits of [petitioner]'s claim"). The state court's decision thus had an adequate basis under New York law.

Notwithstanding petitioner's failure to preserve this claim, this Court may still review the merits of this claim if petitioner can demonstrate both cause for his default and prejudice resulting from that default, or if he can demonstrate that this Court's failure to consider the claim would result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner has not done so.

Petitioner does not offer any cogent arguments why he did not move to withdraw his plea or to vacate his judgment of conviction, prior to his appeal. He appears to blame his trial lawyer, *see* Dkt. #14 at 5, but even giving his *pro se* papers a generous construction, his arguments are unpersuasive. Petitioner makes a number of assertions about claimed shortcomings in his counsel's *pre*-plea performance (which are addressed below), but they did not affect Karlsen's ability to pursue post-plea relief. Since petitioner now asserts his actual innocence, he could certainly have sought to withdraw his plea prior to sentencing.

Aside from that, petitioner has not demonstrated that any purported errors by counsel caused him any prejudice, since, as the Appellate Division stated, his claims are entirely meritless. *See* 147 A.D.3d at 1468. In that regard, this Court's analysis is the same, whether the procedurally defaulted claims are considered in terms of prejudice, or simply on the merits. *See Davidson v. Cunningham*, No. 16-CV-1125, 2017 WL 3738560, at *10 (E.D.N.Y. Aug. 29, 2017) (rejecting petitioner's argument that a miscarriage of justice would result if the court did

13

not review his procedurally defaulted claims, but "in an abundance of caution," analyzing those claims and determining that they failed on the merits).

In particular, petitioner's assertions about his understanding at the time of his plea concerning whether he would be subject to prosecution in California are flatly refuted by the record. At the plea proceeding, it was fully spread upon the record that no promises of any sort had been made by anyone about what the California authorities might do with respect to their investigation into the death of petitioner's first wife, that Karlsen's plea as to the New York charges was in no way contingent on the outcome of the California proceedings, and that apart from what was stated on the record, no assurances had been made to petitioner to induce him to plead guilty. *See* Dkt. #10-6 at 86, 87 (defense counsel agreeing that "there has been no promise to what California is going to do," and prosecutor's statement that he "ha[d]n't had any conversation with California on that"). Had anything that was said been contrary to petitioner's understanding in that regard, he certainly could have spoken up or asked to speak to his lawyer. He did not do so.

Petitioner's contention that the trial court did not adequately inquire into his mental state at the time of his plea also fails. As the Appellate Division put it, "[n]othing on the face of the record demonstrates that [petitioner] lacked a rational understanding of the nature and consequences of his plea." 147 A.D.3d at 1468. Prior to taking his plea, the trial court asked Karlsen if he was suffering from any mental disability, or if he was addicted to any drugs, and he answered both questions in the negative. Plea Tr. at 6. There is no hint in the record of anything that could or should have suggested that petitioner's plea might be anything less than a

"voluntary and intelligent choice among the alternative courses of action open to the defendant."
*Batista v. Wenderlich*, No. 14-cv-6326, 2017 WL 6611232, at *3 (E.D.N.Y. Oct. 4, 2017).

Petitioner also relies on the "miscarriage of justice" exception mentioned above. That argument requires little comment, as the evidence fully supported petitioner's conviction. If anything, he was fortunate to receive the sentence that he did, considering the nature of his crime and the evidence against him. Petitioner's statements admitting all the elements of the charge to which he was pleading guilty "carry a strong presumption of verity," *United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), which he has not overcome, and they were entirely consistent with the other evidence in the case.

It also bears repeating that this Court does not sit as an appellate court, nor is its role to undertake a *de novo* assessment of petitioner's claims. The question this Court must answer is whether the state court's decision rested on a basis at clear odds with federal law as established by the United States Supreme Court, or on an unreasonable determination of the facts. That answer is an unequivocal "NO."


## V. Alleged *Brady* Violations/Actual Innocence

Petitioner now claims that he is in fact innocent of the charge on which he was convicted, and that he lied when he pleaded guilty. Along those lines, he also says that his lawyer was ineffective for failing to develop an alibi defense. He also contends that the prosecution violated its obligations under *Brady* by not turning over evidence that the death certificate and the emergency room technician's report placed the time of Levi's death at "≈3:00 p.m." Petitioner

contends that since he was not home at 3:00 p.m., he could not have been responsible for Levi's death. These claims are baseless for several reasons.

These claims are procedurally barred, for the reasons stated above. Petitioner raised these arguments in his post-trial motions, which were rejected by the state courts on procedural grounds. Those grounds fully support the state courts' decisions. Petitioner's arguments that the state courts erred in concluding that his claims were procedurally barred are meritless and do not provide a basis for federal habeas relief. *See Martinez v. Colvin*, No. 17-cv-757, 2018 WL 6649608, at *3 (S.D.N.Y. Dec. 19, 2018) (federal habeas review was unavailable as to state court's holding that petitioner's due process claim was procedurally barred under C.P.L. § 440.10(2)(b) because petitioner did not raise it in his direct appeal).

Since there is some authority that a guilty plea does not necessarily preclude a *Brady* claim in a federal habeas case, *see Hill v. West*, 599 F.Supp.2d 371, 388 n.3 (W.D.N.Y. 2009), the Court will address the merits of this claim, which, in short, are entirely lacking. Petitioner seems to think that the evidence that Levi's actual death occurred after petitioner left the premises somehow exculpates him. It does nothing of the kind. It is entirely consistent with petitioner's own statements at the plea proceeding that he caused the truck to fall on Levi, that Levi was alive but pinned to the ground, and that petitioner then left the premises for several hours, knowing full well that Levi was likely to die by the time that petitioner returned.

While the Supreme Court has not definitively answered the question whether a habeas petitioner may be entitled to relief based on a freestanding claim of actual innocence, *see Djenasevic v. New York*, 17-CV-6366, 2019 WL 653153, at *5 (E.D.N.Y. Feb. 15, 2019) (citing

*McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)), *appeal filed* (Mar. 4, 2019), Karlsen is clearly not entitled to relief on that ground, regardless of the answer to that question.

Even if such a claim were cognizable in a federal habeas case, the threshold for establishing such a claim would be "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The claim of actual innocence would have to be both "credible" and "compelling." *Djenasevic*, 2019 WL 653153, at \*5 (quoting *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012)). It is neither here. If anything, those adjectives more aptly describe the evidence of petitioner's guilt, not his innocence. Petitioner admitted committing heartless acts to kill his own son, apparently for money.

The only thing the evidence relied upon by petitioner shows is that the death certificate estimated the time of Levi's death as approximately 3:00 p.m. That was only an estimate. It also appears to have been based in part on petitioner's own statements, inasmuch as it says that Levi was "last seen at ~ 1200," and that his body had been found by petitioner, presumably shortly before Cindy called 911 at around 4:00. *See* SR 49, 145-46. Petitioner apparently seeks to use his own self-serving exculpatory statements to medical personnel, made shortly after Levi's death, to show that his subsequent admissions of guilt–including statements made under oath–were false. "Unpersuasive" hardly captures the folly of that argument.

It should also be noted that petitioner received a copy of the death certificate prior to his guilty plea. *See* SR 107 (petitioner's *pro se* state court submission stating that he "admits that he obtained decedent's death Certificate and provided it to insurance company"). Thus, petitioner was in possession of the evidence in question before he pleaded guilty, which further defeats his *Brady* claim.

## VI. Pre-Trial Suppression Motions

In general, a habeas petitioner may not seek review of claims arising from alleged constitutional violations that occurred prior to his entry of a guilty plea. *Tollett*, 411 U.S. at 267. In *Lefkowitz v. Newsome*, 420 U.S. 283 (1975), the Supreme Court carved out an exception to the *Tollett* rule for claims arising out of pre-plea suppression rulings, if the relevant state courts permit such claims to be brought after a plea and conviction. *Id.* at 289-90.

In *Lefkowitz*, the petitioner sought to challenge an adverse suppression ruling that occurred prior to his guilty plea. The Supreme Court held that the petitioner's claim was not barred by his guilty plea because New York law permits a defendant to appeal suppression claims after pleading guilty. *Id.* at 290-91; see N.Y. C.P.L. § 710.70(2) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty"). Following *Lefkowitz*, federal courts in New York have held that state court suppression decisions are subject to federal habeas review notwithstanding the petitioner's subsequent guilty plea. *See, e.g.*, *Hernandez v. Superintendent, Coxsackie Corr. Fac.*, 17 Civ. 2457, 2018 WL 502784, at *4 (S.D.N.Y. Jan. 22, 2018), *report and recommendation adopted*, 2018 WL 2059656 (S.D.N.Y. Apr. 30, 2018); *Pena v. Graham*, No. 08 Civ. 3828, 2009 WL 5173819, at *13 (S.D.N.Y. Dec. 20, 2009).

"However, a defendant may waive the right to appeal as part of a plea agreement, and that waiver encompasses the right to appeal suppression rulings." *Grimes v. Lempke*, No. 10-cv-68, 2014 1028863, at *6 (N.D.N.Y. Mar. 14, 2014) (citing *People v. Kemp*, 94 N.Y.2d 831, 833 (N.Y. Ct..App. 1999)). "Therefore, under New York law, if a plea agreement provides

for a waiver of the right to appeal, and if the plea and waiver are made "knowingly, voluntarily and intelligently," they may be enforced." *Pena*, 2009 WL 5173819, at *13 (citing *Kemp*, 94 N.Y.2d at 833).

In their response to the petition, respondent concedes that petitioner did not waive his claims that his statements were taken in violation of his due process rights, his *Miranda* rights, and his right to counsel. In affirming the trial court's decision denying petitioner's motion to suppress, the Appellate Division considered and rejected all those arguments, *see* 147 A.D.3d at 1467.

Petitioner, then, is not precluded from challenging the suppression rulings in this action, but neither is he entitled to relief. The Appellate Division's decision was not contrary to, or based on an unreasonable application of Supreme Court law. Indeed, it was correct under any standard.

The transcript of the interview at the sheriff's department shows that Karlsen was fully informed of his *Miranda* rights, and that he waived those rights. The trial court's decision lays out the relevant facts, *see* SR 466-67. Petitioner at one point said, "I want a lawyer or something, I guess," but then changed his mind, saying, "Not at this moment, no." Far from pressuring him, the officers sought to clarify that he understood his right to counsel, and to determine whether he did or did not want an attorney present. Petitioner explicitly stated that he understood his rights and was willing to continue the interview, without a lawyer. *Id.* Based on its review of the entire record, the state court found that after being advised of his *Miranda* rights, and knowingly and intelligently waiving those rights, petitioner "never invoked his right to counsel or to remain silent." SR 469.

Thus, the record fully supports the state courts' determinations. There is no basis for a habeas challenge with respect to petitioner's *Miranda* or right-to-counsel claims.

The record also supports the state courts' conclusion that petitioner was not denied his due process rights during the police interview. This claim relates mostly to the duration of Karlsen's interview with the officers, to his assertion that he was under some physical duress, due primarily to shoulder pain, and that he did not have access to his pain medication during the interview.

In denying petitioner's suppression motion, the trial court made a factual finding, based on its review of the record (including a video recording of the entire interview), that "it was evident ... that any fatigue or discomfort suffered by the defendant did not undermine his ability to make a choice whether or not to make a statement, nor was it such as to create a risk the defendant would falsely incriminate himself." SR 470.

On appeal, the Appellate Division held that the evidence supported the lower court's determination that a reasonable person in Karlsen's position would have believed that he was free to break off the conversation and leave, and that "the length of the interrogation in this case was not such that it deprived defendant of due process." 147 A.D.3d at 1468. The court specifically held that "[b]ased on the record of the suppression hearing, which includes a videotape of the interrogation, ... defendant's statements were not elicited by the police in violation of defendant's due process rights." *Id.* at 1467 (citing *Colorado v Connelly*, 479 US 157, 167 (1986)). Those determinations are well supported by the record, and are not contrary to law.

Prior to trial, petitioner also moved to suppress statements he made to his wife Cindy, under the spousal-privilege doctrine. *See* N.Y. C.P.L.R. § 4502(b). The trial court denied the motion to suppress, on the grounds that the privilege was waived to the extent that the officers overheard petitioner's statements to Cindy when he met her at a restaurant, and that the privilege did not apply insofar as petitioner's statements related to wrongs that he had committed against Cindy's stepson Levi. The Appellate Division held that petitioner's challenge to that ruling "d[id] not survive but rather was forfeited by his plea of guilty." 147 A.D.3d at 1467.

I agree with respondent that this claim is both unexhausted and procedurally barred. Petitioner's arguments concerning this claim in the state court were based on state law, and thus he did not fairly present a federal claim to the state courts relative to this issue. In short, his arguments did not give rise to a federal constitutional claim in the first place.

Even if this Court were to consider this claim on the merits, I see no error in either the trial court's findings, or the Appellate Division's conclusion that petitioner forfeited this claim by pleading guilty. The trial court's alleged error in denying the motion to suppress was non-jurisdictional and did not implicate petitioner's constitutional rights. In addition, petitioner's statements to Cindy were made within earshot of other restaurant patrons. That Karlsen may not have known that they were police investigators is irrelevant to whether he waived whatever privilege might otherwise have attached to his statements. *See People v. Ressler*, 17 N.Y.2d 174, 179 (1966) (conversation between defendant and his wife was admissible inasmuch as it was made in the presence of another person); *see also United States v. Longo*, 70 F.Supp.2d 225, 265 (W.D.N.Y. 1999) (attorney-client privilege was waived to extent that a third party overheard discussions between defendant and his lawyer).

I also see no error in the trial court's conclusion that the privilege for marital communications was inapplicable, inasmuch as petitioner's statements related to his killing of a victim who had been raised by Cindy as her stepson since 1993. As explained by the trial court, New York courts have held that the privilege does not extend to statements concerning the declarant's infliction of injury on the couple's child. SR 472-73. At any rate, this relates to matters of New York state law, and does not implicate federal constitutional issues that could provide any basis for federal habeas relief.

## VII. Ineffective Assistance of Counsel

Sprinkled throughout petitioner's papers are assertions that his counsel rendered ineffective assistance, in violation of petitioner's rights under the Sixth Amendment. To a great extent, the underlying bases for such claims have been addressed above, insofar as they relate to petitioner's "innocence," the California prosecution, etc.

Beyond those specific matters, however, the Court sees no basis whatsoever for an ineffective-assistance claim, whether in connection with the pretrial proceedings, the plea, or any post-plea proceedings.

Petitioner's assertions concerning his attorney's alleged ineffectiveness do not even begin to approach the standards set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. The Supreme Court has established that to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and that (2) "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been difficult." *Id.* at 694.

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). Petitioner has not presented any facts indicating that his trial counsel fell short of those standards, that would call into question the validity of his plea. *See McLeod v. Graham*, No. 10 Civ. 3778, 2010 WL 5125317, at *4 (E.D.N.Y. Dec. 9, 2010) ("Where, as here, a petitioner cannot prevail on the merits of his claim, he cannot overcome a procedural bar by claiming ineffective assistance of counsel") (citing *Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001), and *Larrea v. Bennett*, 368 F.3d 179, 182 (2d Cir. 2004)).

The record here amply demonstrates that Karlsen's trial lawyer protected his client's rights, especially considering the strong evidence of Karlsen's guilt. Petitioner himself appears to have recognized that fact, inasmuch as he stated on the record at the time of his plea that he was satisfied with the representation he had received from his lawyer, and that his lawyer had not pressured him into pleading guilty. Plea Tr. at 5. Petitioner has not shown that his attorney's performance was objectively unreasonable, or that anything he could have done differently would likely have yielded a different result.[6]

---

[6] To the extent that Karlsen raises any other grounds for relief, they are rejected and unworthy of comment. That includes his assertion that the state court's denial of his § 440 claim deprived him of his right to appeal. *See Bonilla v. Keyser*, No. 17-CV-1606, 2017 6513958, at *3, n.4 (E.D.N.Y. Dec. 20, 2017) ("To the extent petitioner claims that the trial court's denial of his Section 440 motion or the Appellate Division's denial of his application for leave to appeal violates his due process rights, courts in this district have correctly held that such claims are not cognizable on habeas review") (citation omitted).

## VIII. Summary

As stated, it is not the role of this Court, in deciding a habeas petition, to sit as an appellate court, much less to undertake a *de novo* review of the record. But under any standard of review, the Court concludes that Karlsen's conviction and sentence were entirely proper, correct, and justified. Though I make no factual findings, since the underlying proceedings took place in a different court, the written record suggests no reason to call into question the trial judge's assessment of petitioner as someone who is motivated purely by self-interest, with no feelings of remorse or empathy for his victims or those affected by his crimes. If anything, he is fortunate to have received the sentence that he did.

## CONCLUSION

For all of the reasons stated above, there is no basis to grant habeas corpus relief in this case. Therefore, the petition for a writ of habeas corpus (Dkt. # 1), is DENIED. The Court also denies issuance of a certificate of appealability because petitioner has failed to make a substantial showing of the denial of any constitutional right.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 14, 2019.